The Illinois Appellate Court's 6th Division is now in session. The Honorable Justice Mary L. Hickler is presiding. Please have a seat. Would you call the first case? Good afternoon. Case number 1-20-0996, People v. Brady Franklin. Good afternoon. I'm going to ask the two people who are going to argue this to each tell us your name, and for the appellant, please tell us if you want to reserve any of your time for rebuttal. Mary L. Hickler, the appellant, I'd like to reserve three minutes. Can you spell your last name? R-E-G-E-N-S-C-H-E-I-T. Okay, and you'd like to reserve five minutes for rebuttal? Sure. Okay. Assistant State Attorney Sarah Simpson on behalf of the people of the state of Illinois. Okay, Ms. Simpson. I will remind both of you that you have 20 minutes. We're pretty generous with time, but we will keep you accountable to your time. I'll also ask you both to keep your voices up. This microphone is for purposes of recording. It does not amplify your voice, and there are people in the back row who want to hear everything that you have to say. Counsel for the appellant, whenever you are ready, you may begin. Thank you. Good afternoon, and may it please the Court, my name is Daniel Regenscheidt, and I represent Defendant Appellant Brady Franklin. Mr. Franklin's brief raises three issues, and I'd like to primarily focus the argument on issues one and three, but certainly as time and Your Honor's interest permit, we can discuss issue two. Okay. By permitting adult accusers to testify outside the presence of the defendant, Section 106B-5 falls outside the very limited exception to confrontation rights that was announced in Maryland v. Craig. The brief argues essentially two approaches. First, that even under Craig's own analysis, the Illinois' expansion of the exception to the confrontation clause to adults, albeit moderately intellectually disabled adults, does not suffice to amount to an important state interest to which there should be an exception. And then secondly, that even applying an extended analysis to adults, we also have to consider Crawford v. Washington following a case which followed Craig and strictly limited the way that we now consider exceptions to one's confrontation rights. Strictly limited? It never even talks about Craig, right? No. It does not address Craig. It does address, as we say in the briefs, Roberts, the foundation of Craig's balancing test. And I think it's also important to put Crawford and Craig into context with each other, because Craig was a form of response to Coy v. Illinois, a prior case, where the procedure extension was a sheet placed between the defendant and the child accuser. And in that case, they said, in these types of cases, face-to-face confrontation is critical. The literal presence, not talking about hearsay, not talking about statements, that the rights of face-to-face confrontation is critical and books few, if any, exceptions. And Craig then said, well, it could book some exceptions, and articulated a way of finding an exception that, imagine being an important state interest, could offset the rights of the defendant. But Craig's point. And reliability. And reliability was the foundation of why it was okay to do this. Right. Because if we have evidence that's essentially reliable, it's good enough for the court to consider. Crawford takes that reliability analysis and says, reliability, guess what? It's actually confrontation. The court is the well of reliability. It's the fact, as we said in Coy and as we say now in Crawford, face-to-face confrontation is our gauntlet of reliability. And so Crawford, this is the context that these kind of statutes have to weave between. It's that Craig didn't announce a particularly general test. Craig said, we hold that if a state makes an adequate showing of necessity, the state interest in protecting a child witness in particular, from the trauma, and this is where we get severe adverse effects in the statute, the trauma of testifying, we can come up with a special procedure so that we can not have face-to-face confrontation.  And we see the underpinnings of it, the reasons for it, are long-lasting trauma. It doesn't say long-lasting, but severe trauma to the child witness in particular, that's a critical distinction, from the presence of the accused. So it has to be a particularized to the defendant. It's the defendant's presence that is causing the severe adverse effect. Illinois statute, it expands the category, one, to say moderately or intellectually disabled adults, and it also expands the category of what to look for, a lack of communication as one, if the adult, if they believe there will be difficulty communicating or inability to communicate, that is an exception also on top of the potential for severe adverse effects. So the particular statute here, applying a Crawford test and looking at it, it doesn't fit the exception. And I think we might say, okay, so Craig does explicitly allow children, so what's the difference between children and adults? Here, moderately disabled adults also allows for profound and severely disabled adults, which has a particular definition, which wasn't. Do you think this case would be different if it were a severely injured adult? Not particularly. I think if we get into more as applied discussion, the disability factor is not what is the critically deciding factor for this particular case as applied. And I think in general, even severely and profoundly disabled adults don't fall into the Crawford exception. And I think because it's important to think of why Craig is allowing children this supremely unique role of balancing out an entire class of people, regardless of their unique characteristics. We're saying children as an entire class that are victims of alleged assaults, sexual assaults, and who then have to testify against a defendant in a courtroom. But the fact is that Craig looked back to a lot of First Amendment and obscenity jurisprudence, which had long established that, you know, the protection, the emotional protection of a child is transcendent. It is a state interest beyond the need for elaboration. And part of it's because, from Prince v. Massachusetts cited numerous times in Craig, the democratic society rests for its continuance upon a healthy, well-rounded growth of young people into maturity as citizens. And so the particular special state interest that's at issue here is literally the continuation of the state. And so the state has a unique, transcendent interest in defending the emotional growth and development of children who are child victims of these kinds of crimes. It's not very much the interest that the court focused on in Craig, but it's really up to our legislature to define what interest they're trying to protect. And nothing in Craig says this is the only interest that the state can be trying to protect. Is that correct? Craig sums up the COI round of cases, and COI is trying to limit the cases, and Craig's expanding the extension here. And the problem is, with Craig's reasoning essentially, is that yes, the legislature is then the arbiter of what a particular important state interest is. I have a particular, you know, I was thinking this morning that the state has a particular important state interest in convicting defendants. And so we could make this exception go as far as the legislature decides. It's important that defendants get convicted. And so can we say that we can make an exception when there's a criminal that you need to testify against a criminal? Could we make an exception for any class of people? And the answer has to be no. And it also has to be no because Crawford says the exceptions that we're going to allow to face-to-face confrontation are those that were in existence at the time of the founding, those of common law. So that's what Justice Scalia said. He said we should go back to common law when people weren't represented by lawyers, and of course they needed the right to confront or else there would be no cross-examination. There are reasons that people might not follow that line of thinking, but that is what underlies Crawford. And it's not, I mean, it is Justice Scalia writing the majority opinion in Crawford. In a very Scalia way. Certainly. So just following up on that, if you follow Crawford's rationale, would that mean that there's no exception in the confrontation clause for minors who are victims of sex-related crimes? I think... Because it wasn't historically recognized in our Sixth Amendment jurisprudence. I think the logic extends to raising that substantial challenge to these kinds of exceptions. Fortunately, that's not the case here, and that's not the, you know, that's not the situation that Mr. Franklin... Are you aware of any exceptions historically to the requirement that the defendant be given an opportunity to confront the witness in court? What ends up developing in Crawford is a two-part test. Essentially it says if a defendant is unavailable to testify, and quite literally unavailable, a largely death or in prison or, you know, some severe circumstances, and there's been a prior ability to cross-examine the witness. And so we have the ill that they were trying to remedy is this treason, and they would take, you know, pre-inquire of the witnesses and then present that statement at trial. And that was how the testimony got presented, and that's how people got convicted, particularly in this case, Raleigh, of treason. And the court was putting an end to that, and Raleigh here is saying, bring them face-to-face. I want to face my accuser. And so face-to-face confrontation and cross-examination as they fit together are the crux of the Confrontation Clause. And, again, Scalia writing in a very Scalia way in Crawford says, we will brook, I should probably quote if I'm going to say it, the right to be confronted, admitting only those exceptions at the time of the founding. But there's not open-ended exceptions. That's the phrase. And no balancing test. He's right. We don't like that balancing test. I didn't like getting cragged, and I still don't like it. Because it's, when we're dealing with the Constitution, essentially we end up with a similar problem when weighing it that the trial court had in our as-applied argument. And the trial court's holding essentially, what I'm considering here is the witness's right not to have a breakdown at trial versus the Sixth Amendment of the Constitution. And a balancing test of those two factors, it's almost impossible. I mean, what's more important? And certainly the legislature could step in to make these kinds of decisions. But the fact is, the Constitution has decided the question. It's taken it out of the legislature's hands. And for better or worse, it says, no, face-to-face confrontation unless the witness is quite literally unavailable and there's been a prior ability of some sort. So I guess in the case of an adult witness, how do you really assess whether or not this witness is going to have a breakdown at trial? How is that assessed? I realize what the case law says, and what the statute says, I should say. In this case, it's interesting because you actually, some of the other case laws say you don't have to have a hearing as long as the court makes a finding. In most cases, there is an actual hearing, but the statute doesn't require a hearing. Do you believe this was an extensive hearing, or was this just kind of, oh, she's a wreck? There was a therapist who had testified, who had met with the SR, the complaining witness, on one occasion and did multiple analysis. There was a full intellectual exam that was given. To the extent that the question is, is that an issue here, I don't know that the briefs or I am prepared here to say that this witness was not moderately disabled, intellectually disabled. My question is, I'm going somewhere with it. Was there actually a hearing? There was an actual hearing. How long did the hearing last? I am not sure in the transcript. There were three witnesses, one of which was the witness herself, a social worker who had met with her on multiple occasions, I think as witness preparation kind of thing. And her testimony was that the complaining witness didn't want to be around, even in the building, when our defendant might be present. And she displayed a lot of characteristics that she was upset and occasionally would be uncomfortable. And then there was the therapist who rendered her opinion on the witness. Because it seems to me that the hearing started off with the trial court saying something to the effect that if you need to be segregated and your testimony come in over like, say, closed circuit, I'm recording, outside the presence of the defendant, it would be one or the other. And that's kind of how it starts. At least that's what the record appears to show how it starts to me. I realize that sometimes everything is not in the record. But do you know more than I know about that? All I have is the paper on the record as well. I would say as far as what happened in this case is that the trial court's question that it answered, like I said, was ultimately the right of not to have a breakdown versus the right to confrontation. It was not, and as far as I can recall, I have the judge's text here, the judge doesn't say. Now where is that in the Constitution, the right not to have a breakdown? I don't know that that is a constitutional right. I apologize. I have to take it on my word that the court itself does not say, I find this is a witness who is going to suffer severe emotional distress, and the court itself doesn't say that she's going to be unable to communicate to the point that it matters. To the extent that it does, that's not a Craig exception, but also I do want to note that this ended up becoming a bench trial, and so any emotional difficulties the witness might have on the stand, to the extent that we might prejudice a jury or anything like that, the court could take all day. The court could come up with any procedures, constitutionally valid, that would protect this witness. For better or worse, face-to-face confrontation is the one requirement that there's not an exception to in this case. To the extent that I want to talk about the procedure, the procedure itself was, I don't know what was going on. I don't have anything outside the record to explain what happened. I can say ultimately the witness testified from the well of the courtroom while Mr. Franklin was outside. We address this kind of as the right to be present, a Sixth Amendment right. So in that argument, as far as that argument, had a specific objection been made that, for example, I disagree with this, but you've ruled, judged, the statute requires that my client be permitted to be in the courtroom, and the witness has to be in a separate location. Had that specific objection been made, the judge could have easily cured it and we wouldn't be here on that issue at least. Correct, but I think, I mean, part of the problem is that that objection did happen. Your specific objection? Page 244 of the record. However, my client is being forced to observe Mrs. Essler testify from another room, and for her not to have to face my client and also have the additional, yeah. So on 244 he says, my client's being forced to face the complaining witness from another room. But in the post-trial motion you specifically said that the opposite. It was particularly general. And in fact said that she, okay, I'm sorry, I'll let you answer the question. No, we addressed it in the report brief a bit as plain error and didn't get into the reference in the motion for a new trial. I think considering it as a right to presence, the defense right to be in the courtroom, I think that could get incorporated under .9 that was in the motion for a new trial, and so we can generously consider it preserved. But it's also a substantial right that a defendant has to be present for their own trial. So you're saying at page 244 of the record there was a specific discussion of this switch from having him in the courtroom to having her in the courtroom and him outside the courtroom? No, the discussion happened beforehand. It's the defense counsel at 244 saying, hey, I just found out my client's going to be outside and we're going to be inside, and I want to renew my confrontation objection, and I object to what's going on here being forced to be in another room. So he does say both of them. But your client's lawyer didn't say, Judge, you got it backwards. It's the other way around. No. No, and it's not the other way around. They both should be in the courtroom. Well, I understand that, but assuming that you accept the ruling as a matter of Constitution law, the statute requires it to be the other way around. Correct. If there's no further questions, I'm sure my time has gone over as usual. Well, just clarify that for me because I'm still not clear. You said that counsel said, I just learned. How did counsel learn that? I don't know. It's not in the record. There must have been something that transpired ahead of time or outside the transcriber. And who was counsel speaking with when he said that? The state and the judge. It was one of those times I wish I had pulled up every page that I normally do. Speaking to the state and the judge, and then what was the response to that? Are you saying that counsel did object at that time? Yeah. It just kind of proceeded. But there was an objection made. Page 217 is the initial objection to the procedure, and 244 in the record is a renewed objection where there's some sort of court break, and then defense counsel says, oh, I've just learned this. I renew my objection. And then opening statements began. Okay. And then I hope Justice McFall won't take any of your time, but I have to ask this question. I did not take any of your time. Tell me, you're asking us to find the statute unconstitutional. What's your absolute best argument for that? Because you're asking a leap. You're asking us to make a leap here. The leap is that the extension of Craig to adults, but to moderately disabled adults and the rest of the language in the statute, is an open-ended exception that is not permitted. And it's not permitted by Craig explicitly. Craig allows for children. We don't need to worry about that. But the extension of the statute to moderately disabled adults is an unconstitutional infringement of one's face-to-face confrontation rights. And that's just it. There are not allowed to be open-ended exceptions, and this is what that is. Even allowing for the Illinois cases, the Illinois Supreme Court cases that have justified the statute, all of those cases apply to children. There's been no prior discussion by any court that I've been able to discuss in Illinois that addresses this extension or similar ones. Do you have any sense of how often this exception is relied on? I don't. Well, at least for adults. Yeah. Okay. That's fair. That's completely fair. All right. You still have five minutes for rebuttal. Oh, fantastic. Thank you. You said five minutes for rebuttal? Yeah. No, five minutes for rebuttal. Unless you have anything else, any other questions for everybody? All right. All right. Thank you very much. We ask that you reverse the judgment of the circuit court. Right. And you can ask us again when we vote. May it please the Court. Assistant State's Attorney, Sarah Simpson, on behalf of the people of the State of Illinois. I'd like to begin by touching on the procedure implemented, just because that was the last issue we had touched on as the Court. The defendant's right to be present was not violated by the procedure the Court undertook pursuant to Section 5, Slash 106B-5. And to begin, there was no objection. The record does not bear out what counsel previously argued. There was a pretrial motion that was heard, and an objection was made to the procedure being made, in general, to being implemented. Then prior to trial, before opening statements, defense counsels had switched, and the defendant's new attorney renewed the objection that had been made to the pretrial motion, saying, for the record, I want to renew that closed-circuit television is being utilized at all. She then went on to make an extended objection to support people that had been there for S.R., that were being allowed to sit in the jury box while the witness testified. And that went on for quite some time. At no time did counsel object to the procedure of the defendant being placed in the back by the Sheriff's Office and S.R. being allowed to testify in court. And that was not before opening statements. Then there was an hour break. And then when the trial came, because it was a bench trial, S.R. was the people's first witness, and the defendant was taken back by the Sheriff's Deputy Area, where they watched the court proceedings happen and was placed with his attorney. There was no objection at that time. He had one attorney with him and another attorney in court that was the lead attorney that was conducting the questioning. And no objection at any time during those proceedings while S.R. was being questioned. And that's important for two reasons. One, as Your Honors had pointed out, if he had objected and had a problem with that procedure being implemented, he could have brought it to the court's attention at that time, and then the court could have evaluated the situation and made any changes as the court felt necessary. And two, there's a suggestion from the argument at the pretrial motion that maybe it was strategic not to object, because counsel at that hearing, when arguing against the closed-circuit television procedure being implemented for S.R., actually made, and I'll quote, We're still objecting her testifying outside the courtroom, whether this is a bench or a jury trial. The finder of facts, the trier of facts, should actually see her demeanor, see how she reacts, and they should make a determination of whether or not this is real or not, whether or not she's faking it, or if this is an actual condition that she does have. And that's on page 217 of the record. So while not requesting that procedure per se, there was a suggestion there that they may have wanted the trier of facts to see S.R. testify, see her demeanor as a witness, evaluate her mannerisms, and be able to have that experience as the finder of facts. So because there was no objection, and because it may have even been strategic, defendant can't object because forfeited his right to complain about that and appeal now, and shouldn't be allowed to bring it now. Are you suggesting he can't even argue plain error, which is what he does in his reply? Well, in his reply brief. And that wasn't brought in the initial brief, so there's a forfeiture issue there. But, yes, to the extent, I mean, I think the law is that they can wait until their reply brief, because they don't know if you're going to raise it or not as being forfeited. Okay. Arguably, yes. And even under, I think there's a policy argument here that it's unfair for a defendant not to object when the court could actually remedy the situation at trial and then now object on appeal. When they had, when he had a full opportunity to object then, and then we wouldn't even be arguing about it on appeal now. But to the extent that he's arguing plain error, yes, he could bring it under plain error. And in this case, it's not even plain error for several reasons. One is that there really was no error here because the court substantially complied with the statute. And the spirit of the statute is the separation between the victim who's testifying versus closed, via closed-circuit television, and the defendant. And it's to provide the safest opportunity for the victim to testify so we can, so they can say their truth and we can explore the fact-finding and have a true adversarial process here. And so the court did that by having SR testify in the courtroom and the defendant testify or watch from closed-circuit television and backed by the sheriff's deputy area. And then in this case, there's no plain error either because the defendant's rights were not violated. And as the defendant points out, he's arguing under a right to be present, which is not a substantial constitutional right, but rather is considered a lesser right to secure the substantial rights of the defendant or met. And it's not absolute. And it's only violated if the absence causes the proceeding to be unfair or if the absence results in the denial of an underlying substantive right. And in this case, there were no underlying substantive rights that were violated of the defendants. Well, doesn't it affect his ability to communicate with the lead attorney? Well, in this case, it did not. No, because he had, he was placed in this area with an attorney present. Oh, I understand that. And the other attorney, the younger attorney, was texting his lead attorney. Exactly. But that's still, that's not the same as being able to lean over and say something. Well, arguably, and we don't know if it was younger or older, we just know that there's another attorney that was with him at the time who was presumably capable and could work and explain the testimony to the defendant and counsel the defendant and had an electronic communications method of the lead attorney in court. And the record actually indicates that prior to finishing the cross-examination, the lead attorney paused and asked the court, may I have a moment to see if the defendant has anything? And she came back, and then she rested her cross-examination. So his right to participate in his own defense, there's no evidence at all that that was violated. And there's no claim that there's anything that he wished to ask or wished to say that hadn't been asked because he did have those open lines of communication. And in addition, because he had an attorney present with him, he is right to counsel, and an attorney in the courtroom, his right to counsel was honored. SR testified under oath and was subject to full cross-examination. So in that method, his right to confrontation was honored. And as we put out in our brief, this case is factually analogous to the Martinez case where there was found to be no plain error, where the defendant didn't even have an attorney present. He only had an intercom system to communicate with counsel in the courtroom. So for all of those reasons, the defendant in this case, there is no plain error by the statute, by the procedure that the court undertook, and really no error at all. In addition, as we point out in our brief, there's a harmless error argument component, too, if this court even did feel like there was any error in this procedure because it didn't contribute to the defendant's conviction. And the overwhelming evidence supported the defendant's guilt by way of the testimony of his children who corroborated her account, the officers who saw her after she escaped the defendant's residence and she outcried to them, the medical personnel whom she corroborated the attack that the defendant did, and the physical evidence that was found in the basement being her hair, the chair, the pipe he hit her with, the block he dropped on her foot. So there was overwhelming evidence of guilt in this court, too. So if there's no further questions, I'll move on to the first issue. Yes, to the Crawford case. Section 5-106B-5 of the Code of Criminal Procedure is both facially constitutional and was constitutionally applied to the defendant in this case. And it's facially constitutional where it comports with each of the principles that was enunciated by the Supreme Court in Maryland v. Craig. It provides for a witness to testify under oath, subject to cross-examination, and with the observation of the witness's demeanor by the prior facts. And in addition, it requires a case-specific finding of necessity before allowing for a witness to testify over closed-circuit television. And counsel referred to the Coy decision, and that was the difference in Coy. Coy had a barrier up between the testifying child witness and the defendant. And the court didn't have a problem with the fact that the child was testifying apart from the defendant. The problem was that there was no case-specific finding of necessity. And that's what our statute has, and that's what Maryland v. Craig found was necessary to determine whether this procedure applies to a child witness, and in our case, a witness with an intellectual disability. What about counsel's point of all the emphasis in Craig on the special needs of children, the special duty of the state to protect children? Well, because that's what the statute in Craig spoke to. At that time, that statute dealt only with, well, the statute they were looking at dealt with a child that was testifying via closed-circuit television in these types of proceedings. However, protecting intellectually disabled adult victims is an equally important state interest to protecting child victims. And if you look at SR in this case, SR is a 47-year-old woman with a moderate intellectual disability. She has the academic capacity of a kindergartner and functions overall at the age of an 8- to 10-year-old child. Her reading skills are at a kindergarten level. She can only spell her own name and no other words. And her math skills are limited to single-digit addition and subtraction. So she's the functional equivalent of a child. And that's the group, the children are the group that the court found there's a legitimate state interest in protecting. But the defendant's focus is off on what the Craig court was saying. It wasn't because these people are going to turn into functioning adults and they're going to be the ones who are ruling a society. They were looking at the developmental needs of the child in the moment, the witness, like what the witness is capable of doing and has the emotional wherewithal to withstand. And the concern with Craig is that a child who doesn't have the emotional capability to deal with the trauma of facing their attacker would shut down and not even be able to communicate. And that actually subverts the confrontation clause, which is truth-seeking and an adversarial process to fight, to let the witness actually testify. And those same concerns are true of intellectually disabled people, moderately, severely, profoundly, or developmentally disabled people in certain cases. Remember, this is a narrowly tailored statute. Not anyone who has one of these conditions would seek the protection of the statute. It's only those people that are going to suffer severe consequences by the testimony, by being face-to-face with the person who's committed an atrocious sexual assault. So do you believe that those severe consequences are the same for a moderately disabled adult as it would be for a child who we know that we want them to grow into maturity and we want them to be functioning adults? So you believe that the same application applies to this moderately disabled adult as it would to any child? If the child is going to suffer severe adverse – and I'll skip the language for the statute, it's very specific – severe emotional distress such that serious emotional distress such that they cannot reasonably communicate or severe emotional stress that is likely to cause severe adverse effects, yes, I think what the legitimate state interest we have is in protecting our most vulnerable members of society. So that includes children, that includes intellectually disabled adults and developmentally disabled adults. Yeah, but we're talking about someone who's moderately disabled, who has a forgery conviction, who is a mother of four, grandmother of, I believe, eight, and that's 47 years old, and who was, I believe, buying alcohol at some point and marijuana. So you think that this person is the same as a child. We'll just say a 12-year-old child. Well, the statute allows for children up to 18 to take the protections of the statute. Well, what about a 17-year-old child? I mean, in this... Is this 47-year-old person who's a mother of four, grandmother of eight, smokes marijuana, drinks, and so forth, is the same as a 17-year-old child? And just to add one more factor, I think Dr. Twal is it? Yes. Also acknowledged that she compensated for her intellectual disability with her strong socialization skills. So add that as an additional factor. Well, right. But in this case, it's a case-specific finding of necessity. And in this case, is this witness equivalent to a child? Yes. Dr. Twal testified that she was very childlike. Whenever she talked about the facts of this case, the idea of talking in front of the defendant, she shut down emotionally, she cried. Her fight-or-flight reaction was so severe that she would physically try to leave the surroundings. And to point to, Justice Walker, your comments about her background, the fact that she gave birth to children does not mean that she's not childlike in all other matters that we're trying to protect here, in an intellectual matter, because the evidence shows that there's really no way that she could have been able to raise those children. There's no evidence that she raised those children without significant help. If you look at the testimony at the hearing, she functioned in, like, the 1% for any kind of hygiene, coping skills, and she scored a neat 1% in tests measuring the ability to complete tasks of daily living. That's hygiene, chores, functioning in the community, and her coping skills. And she reported that her living boyfriend took care of her, completes her chores, does cooking, helps her get to appointments, and helps her take public transportation, because she can't read well enough to know the signs to know where she is within the town. And she's never lived independently without the presence of an adult or one of her older children. So the inference from this testimony is that she had significant help in raising the children. And as to the forgery conviction, all we know is that she had some type of background. We don't know the facts of it. We don't know what her participation or whatever, even what her knowledge was going into that situation. So the evidence at the hearing shows that she was absolutely situated the same as a child. Now, I know the trial judge said she was a mess, but do you believe that the judge actually found that she will suffer serious emotional distress such that she cannot reasonably communicate or severe emotional distress that is likely to cause her to suffer severe adverse effects by testifying in the presence of an adult? Yes, without using the language of the statute. What the judge was trying to say, I think... What exact language did you find that the judge used? Because I remember the judge said that she's a mess and that she needs to... She should not be testifying in front of a defendant because she's a mess. It was simply colloquial, I agree. However... I didn't find the language in the statute there, so why don't you help me with that? Okay, so it's saying that she had an emotional breakdown, which would be a severe adverse effect, correct, on the witness stand when asked about being in open court with the defendant, and he called her a wreck, which would be considered severe emotional distress. It's a colloquial way of saying that she's having severe emotional distress, but if somebody's an emotional wreck, that's severe distress in legal terms. Well, that may be defined differently for everybody in this room because we all have different backgrounds, so... Well, okay, so... But the court did make a... Well, the court found that the statute applied, so without using the exact language within the statute, he did point to things that indicated that S.R. was having a severe adverse effect and would be unable to communicate if face-to-face with the defendant. And he made all of these findings based on the record support that is in there. I mean, S.R. did testify that she wouldn't be able to be in the courtroom with him. Dr. Tall opines that S.R. would be unable to function if she was in the courtroom with the defendant because her fight-or-flight reference is still severe. That could be true of every single sexual assault victim. Well, and she did address that, that is true, and that point was brought up by the defendant in his brief, but she said that she had the fight-or-flight of a very young child, whereas any sexual assault victim who may have that same fight-or-flight reference, people who are neurotypical, who do not have intellectual or developmental disability, have the coping mechanisms and the emotional wherewithal to get themselves through that situation. So my reading of the record, it appeared to be a very brief interview with the court and the accuser, and I'm not sure how that was assessed. First of all, a short period of time, and I'm not sure how you really assess at all whether this person is going to have this severe emotional breakdown during court or in the future and that it's going to have a long-term effect on them as you would with a child, a 17-year-old child. Well, two points to that. The hearing actually appeared to span the better part of a day, so they came back, they had the testimony of Dr. Tall, who testified for quite some time, and then the testimony of victim specialist, Ms. Cadenas, and then the court went above and beyond and called for SR to come down to testify, which isn't required in the statute, but the judge wanted to see her and talk to her about how she would be able to handle, what her feelings were about being testifying in court with the defendant. So while the testimony of SR might have been shorter, the testimony of Dr. Tall continued on for quite some section of the record, so a portion of the day, it would seem. So the courts, when they looked at, and we cite a number of these cases in our brief, dealing with child victims and the type of evidence that's been found to be constitutional application for them to testify under closed-circuit television, and those have been, the court looks to the expert testimony. They looked at DCFS investigators, therapists. There's one case where the court upheld the child being able to testify, I think it's a Smith case, via closed-circuit television, based on the testimony of her mother, without any expert witness testifying. So in all of those cases, the testimony that the state put forth here was as compelling, if not more compelling, than the testimony where the courts have found the statute is constitutionally applied to those defendants. And to answer Nara's question about how you make the determination, Dr. Tall was an expert in clinical neuropsychology, so her expert opinion, and there was no expert to contradict her, no other expert testified, her opinion was that S.R. would not be able to handle testifying in front of the defendant, that she wouldn't be able to communicate, and she would have a fight-or-flight reference that would cause her to break down, which is exactly what the statute calls for. And so by the testimony of Dr. Tall, by Ms. Cadenas, who said that even bringing up the facts of the case and the thought of seeing the defendant caused S.R. to shut down and become uncommunicative, the record supports the court's finding, even if he didn't use the exact words in the statute and instead referred to an emotional breakdown or an emotional wreck. So the court made appropriate findings, and based on more than sufficient evidence that was brought forth by the people at the motion. Ms. Simpson, if I could ask you to pivot to Crawford. Sure. Would you acknowledge that Crawford changed the Confrontation Clause jurisprudence landscape? As to Craig, or just in general? Well, in general. In general, Craig made some changes to the Confrontation Clause landscape, absolutely. Crawford. I'm sorry, Crawford. As far as concerns out-of-court testimony, testimonial evidence of out-of-court witnesses, which we do not have in this case. So yes, to that extent, where the witness is not available for cross-examination, where there's testimonial evidence being offered from a witness that's not present in court, Crawford did absolutely change the landscape. However, it didn't change the landscape of Maryland v. Craig, and it certainly didn't overrule Maryland v. Craig, because those aren't the circumstances. How do you square the two, though? Because Mr. Ravenscheid argues that Justice Scalia in his writing for the majority looked to our history with the Confrontation Clause, and there was no exception for minors historically. And so, as I asked him, well, does that mean that that's not constitutional either? I think he was suggesting that it may not be. I don't know if he went all the way that far. And so, my question is twofold. One is, does Crawford compel this Court to conclude that this exception in the statute for disabled adults is unconstitutional? And number two, do we have a prerogative to make a determination, or are we bound by the Illinois Supreme Court's decisions in this area? So to question one, does Crawford compel the finding that the statute is unconstitutional? No. And the first reason is that Crawford did not overrule Maryland v. Craig. And to that point, the Supreme Court knows its own jurisprudence. And as we noted, Justice Scalia wrote the opinion in Crawford, and he also wrote the dissent in Craig. So he knows the rationale and the reasoning behind the Craig decision. And if the Court was choosing to overrule Craig in Crawford, they would have done so. And they would have written that explicitly, like they did with the portions of Ohio v. Roberts that they overruled. And the fact that Craig is not even mentioned goes to show that they were not attempting or inferring or literally overruling Craig. And to that point, the Illinois Supreme Court, who this Court also looked to for our federal constitutional jurisprudence, has not held that way either. And in fact, as counsel recognized in his reply brief, the Illinois Supreme Court in 2005 in People v. Quadrado actually affirmatively cited Maryland v. Craig, a decision that came out the year after the Crawford decision. So to answer Your Honor's first question, no, Crawford did not impact Craig or the statutes requiring this Court to find it unconstitutional. And second of all, yes, we should look to the Illinois Supreme Court's interpretation, and they have thus far found that Craig is good law and is not impacted by Crawford v. Washington. So based on that reason, and in fact, the reason that Crawford itself is factually distinguishable from this statute and the situation in Maryland v. Craig, because here SR was available to testify, was subject to full cross-examination, and there was no ex parte examination, and didn't testify about any prior testimonial statements. So Crawford would just be inapplicable, and thus Craig is still good law following the Crawford decision. Did I answer both parts? Yes. I think you're out of time unless there are more questions. If I may briefly conclude. Sure. For these reasons and the reasons that are brief, the people of the State of Illinois respectfully request this Honorable Court to affirm the defendant's convictions for aggravated criminal sexual assault and aggravated kidnapping. Thank you. Thank you. Mr. Reichenstein. Excuse me one moment.  Thank you. And Justice Taylor, to the extent that I hesitated to discuss the impact of Crawford on the child aspect of this statute, I think I've done what none of us want to do, and that's allow our emotional understanding of what is going on here to kind of override the constitutional considerations that are really at issue. The fact is the right to be confronted with witnesses against him, the Sixth Amendment, is most naturally read as the reference to the right of confrontation in common law, meaning only those exceptions established at the time of founding. So this statute is unconstitutional under a thorough analysis under Crawford, I believe, applying that section, even children. And that's simply where we are. Even though our Illinois Supreme Court has said otherwise, at least vis-a-vis children. Excuse me? Sorry. Our Supreme Court has told us that Craig is still good law vis-a-vis children, notwithstanding Crawford. Well, yeah. I see the tension. I think we all see the tension between these two cases. Absolutely. Crawford for the state sees the tension. We all see the tension. The Illinois Supreme Court has directly addressed the question were pre-Crawford. The state cited a case that referenced Craig, but it was not, I think it was Cuadrado. That wasn't a case like this one. It wasn't about the statute. It was a different reference about confrontation clause issues. I don't have the facts in front of me at the moment, but it was slightly off. So the Supreme Court hasn't actually affirmed post-Crawford. So would it be a fair sort of, someone's looking at these two cases trying to figure out a rule of law, right? Would one fair conclusion be that for minors who are victims of sexual crimes, they may under certain circumstances testify remotely or by video. But in all other instances, we look to history. Is that a fair consideration? Yes. I think that's the only way you identify Craig. I mean, the Illinois Supreme Court favorably citing Craig, they can't overrule Craig either, and they can have a different understanding of the Sixth Amendment in Illinois a little bit, but we have to acknowledge that they're the Illinois Supreme Court and they're going to favorably cite the United States Supreme Court, and they can't overrule it any more than we can overrule Craig here, which is not what we're looking at. We're looking to simply distinguish Craig and its allowance, which is its allowance, from adult cases. I also want to respond to counsel's comparison of this case to Martinez, which did utilize the same procedure, and it seemed like, hey, there's no problem if a defendant testifies from outside or a defendant experiences the complaining witness testify while the defendant's outside. In Martinez, the procedure was explicitly agreed to, and part of the discussion in Martinez is whether it's forfeiture or waiver, and essentially they say, you agreed to it, so it's forfeit, not waiver, whichever, however that plays out. So the issue is not the same as here where we're objecting to the whole thing. And then secondly, it is a question of harmlessness. As far as the corroborating evidence and the specifics, I will say that after the motion for a new trial, two of the three sexual assault counts were dismissed because the court realized, oh, there wasn't enough evidence for particularly these two cases. So the idea that the evidence was just so profoundly overwhelming based on the testimony or that SR's testimony didn't have any impact, that was not the case. Even in the face of all of the evidence, two of the counts, there were three discreet charged sexual assault counts, and two of them, the court said, even in the face of all this testimony, I'm not going to, I overrule myself or I find not guilty on these two counts. You cited Justice Steigman's concurrence in People v. Radner, but even Justice Steigman says it's not up to us, it's up to the Illinois Supreme Court. Absolutely. And so what's your response to that? It was a child case. All of these are child cases. This is our chance to let the other courts get it right and apply this. It's a difficult thing to slice, but I will say that the courts consider this, you know, confrontation, face-to-face confrontation may unfortunately upset the truthful rape victim or abused child, but by the same token, it may confound and undo the false accuser or reveal the child coached by a malevolent adult. It is a truism that a constitutional protection has costs, and that's from Coy. And then Crawford itself cites Maddox saying, you know, yes, the defendant has the advantage here, but you know what, the substance of the constitutional protection is preserved to the prisoner the advantage he once had of seeing the witness face-to-face and subjecting him to the ordeal of cross-examination. This, the law says, he shall under no circumstances be deprived of. Maddox, 1895, cited in Crawford. And so, yes, are there exceptions to the Constitution in order to protect the vulnerable? For that, we have to look back to the Constitution, the way it was founded, and while there may be exceptions for children, developing disabled adults don't fit in the categories that have been already carved out, and there's no reason, there's no good reason to apply that jurisprudence to the future, to new categories wherever the legislature may decide to draw their line. So we ask you again, if you'll reverse the ruling of the circuit court and remand this for a new trial. Thank you both. This was really, really well-breathed and really well-argued on both sides, and we will take this matter under advisement and you will hear from us.